*867 OPINION OF THE COURT
Hilda G. Schwartz, J.
Petitioner moves for an order pursuant to CPLR article 78, directing the Department of Housing Preservation and Development to issue its certificate of reasonable costs to petitioner for petitioner’s application for tax exemption and tax abatement under section J51-2.5 of the Administrative Code of the City of New York, upon the grounds that respondent’s denial of petitioner’s application for such benefits was illegal, arbitrary, capricious and unreasonable.
Subdivision d of section J51-2.5 of the Administrative Code provides, in pertinent part: "The benefits of this section shall apply: (1) to any multiple dwelling which is altered * * * with the aid of a loan provided by the city of New York”.
This estimate of tax revenues by petitioner was also made part of the report of the Bureau of the Budget to the Board of Estimate dated December 5, 1966, on which the Board of Estimate acted.
In 1966, petitioner Becksmad Gardens, Inc. (Becksmad), a Mitchell-Lama rental housing company organized under article 2 of the Private Housing Finance Law, then known as Garden Court Apartments, Inc., submitted a plan and project application to the Housing and Redevelopment Board, a predecessor agency of respondent, to the City Planning Commission and to the Board of Estimate for a $1,961,500 Mitchell-Lama mortgage loan and a 50% tax exemption for the purpose of rehabilitating 10 old law tenements.
In the plan and project submitted to these city agencies and the Board of Estimate, petitioner represented that the city would obtain greater tax revenues after completion of the rehabilitation than the amount being paid. That representation, signed by Willard Bleyer, who also signed the instant petition, stated: "When completed even with the granting of partial real estate tax exemption, the City will derive real estate revenues estimated at more than $34,000 per year. At present, the real estate taxes are less than half the amount which will be paid after the completion of the development”.
On February 9, 1967 the Board of Estimate authorized the city to make the $1,961,500 Mitchell-Lama mortgage loan and granted the project a 50% tax exemption.
Subsequently, petitioner obtained further Mitchell-Lama subsidies. After completion of the rehabilitation project in *868 1971, the Board of Estimate, on October 22, 1972, increased Becksmad’s tax exemption to an amount computed on the basis of not less than 10% of shelter rent, the maximum authorized by law (which is approximately equivalent to an 80% exemption). Authorization also was granted to increase the amount of the mortgage loan from $1,961,500 to $2,253,-800.
On November 8, 1973 Becksmad applied to the Department of Housing Preservation and Development for tax abatement and tax exemption pursuant to section J51-2.5 of the Administrative Code. By letter dated October 25, 1977 respondent denied Becksmad’s application.
With all the Mitchell-Lama subsidies received by Becksmad in the past, it is clear that if the additional tax abatement now requested were granted, the taxes now payable by the petitioner (approximately $34,000 per annum) would be reduced to zero for a 20-year period.
The tax exemption subsidies now provided to petitioner under section 33 of the Private Housing Finance Law and to be obtained through the year 2000 (when the 30-year exemption period will terminate) come to very substantial tax savings, conservatively estimated at $2,359,196.
Respondent’s denial of petitioner’s application for section J51-2.5 of the Administrative Code benefits was not arbitrary or capricious. The rehabilitation work was accomplished by means of Mitchell-Lama mortage financing and tax exemption subsidies. Becksmad does not dispute that the rehabilitation of its 10 substandard, old law tenements was accomplished by means of the city’s Mitchell-Lama mortgage loan and tax exemption subsidies. It does not claim that after the completion of the project in 1971, any additional rehabilitation work was performed.
The legislative intent of section J51-2.5 of the Administrative Code was to induce landowners to improve their buildings and to create new much needed units in existing buildings. (See Matter of Martell's Rest. Corp. v Housing and Dev. Admin., 64 Misc 2d 991, affd 37 AD2d 691.)
Respondent asserts that the rehabilitation work was completed in 1971 and that a grant of petitioner’s instant application would result in a tax windfall to petitioner of approximately $750,000 at the expense of the City of New York and the citizens and taxpayers. Such a grant would be contrary to the legislative intent and against the public interest. It also *869 would be contrary to the representation and commitment made by petitioner in its plan and project submitted to the Board of Estimate in 1966.
The determination of the respondent was based on the law and was not arbitrary or capricious.
The petition is accordingly dismissed.